UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAULETTE N.,[1]<br>　　　　Plaintiff,<br>　　v.<br>ANDREW M. SAUL,<br>　　　　Defendant. | Case No. 20-cv-04950-SK<br><br>**ORDER REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Regarding Docket Nos. 16, 23 |

This matter comes before the Court upon consideration of Plaintiff Paulette N.'s motion for summary judgment and the cross-motion for summary judgment filed by Defendant, the Acting Commissioner of Social Security (the "Commissioner"). Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having carefully considered the administrative record, the parties' papers, relevant legal authority, and the record in the case, the Court hereby GRANTS IN PART and DENIES IN PART Plaintiff's motion and GRANTS IN PART and DENIES IN PART the Commissioner's cross-motion for summary judgment for the reasons set forth below. The Court REMANDS this action for further proceedings.

**BACKGROUND**

Plaintiff was born on July 19, 1961. (Administrative Record ("AR") 106.) On March 16, 2017, Plaintiff filed an application for a period of disability and disability insurance benefits, alleging that she was disabled starting on January 18, 2017. (*Id.*)

On September 25, 2018 and June 6, 2019, Plaintiff, accompanied by counsel, testified at

---

[1] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

hearings before the Administrative Law Judge ("ALJ"). (AR 31-66, 67-105.) Plaintiff and vocational expert Kathleen McAlpine testified at the first hearing and Plaintiff and another vocational expert, Lynda Berkley, testified at the second hearing. (*Id.*)

The ALJ found that Plaintiff has not engaged in substantial gainful activity since January 18, 2017. (AR 17.) The ALJ also found that Plaintiff has severe impairments of lumbar degenerative disc disease, cervical spondylosis and stenosis with a history of 2011 anterior cervical fusion, intermittent asthma/reactive airway disease, and status post 2016 right shoulder arthroscopy for partial thickness rotator cuff tear. (AR 18.) The ALJ found that Plaintiff's plantar warts and mental impairments are not severe impairments. (*Id.*) The ALJ then found that none of Plaintiff's impairments meet or medically equal the severity of a "listed impairment" in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 20.)

Next, the ALJ found that Plaintiff has the residual functional capacity to perform medium work, except she can lift and carry 50 pounds occasionally and 25 pounds frequently, can stand, walk, or sit for six hours each in an eight-hour workday, and has various postural and environmental limitations. (*Id.*) Based on this RFC, the ALJ found that Plaintiff can perform her former job as a public information officer as that job is generally performed, although her environmental limitations prevent her from performing it as she actually performed it in the past. (AR 23.) Alternatively, the ALJ found that there are other jobs in the national economy that Plaintiff can perform, including general office clerk, hotel desk clerk, office helper, ticket taker, bagger, and stock clerk. (AR 23-25.) The ALJ therefore concluded that Plaintiff is not disabled. (AR 25.)

Plaintiff makes several substantive objections to the ALJ's findings and requests that the Court remand the case for an award of benefits. (Dkt. 16.) Defendant contests each ground of alleged error and requests that the decision of the Social Security Administration be upheld. (Dkt. 23.) The issues to be decided are as follows:

1. **Whether the ALJ erred in assessing Plaintiff's mental impairments;**
2. **Whether the ALJ erred in discrediting Plaintiff's subjective testimony;**
3. **Whether the ALJ erred in failing to discuss the lay witness testimony of**

**Plaintiff's daughter; and**

4.      **Whether the ALJ erred in assessing Plaintiff's Residual Functional Capacity and finding that Plaintiff can perform her past relevant work and other jobs existing in the national economy at Steps Four and Five.**

## ANALYSIS

### A.     Standard of Review.

A federal district court may not disturb the Commissioner's final decision unless it is based on legal error or the findings of fact are not supported by substantial evidence. 42 U.S.C. § 405(g); *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998) (citation omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citation omitted). To determine whether substantial evidence exists, courts must look at the record as a whole, considering both evidence that supports and undermines the findings by the Administrative Law Judge. *Reddick*, 157 F.3d at 720 (citations omitted). The ALJ's decision must be upheld, however, if the evidence is susceptible to more than one reasonable interpretation. *Id.* at 720-21 (citation omitted).

### B.     Legal Standard for Establishing a Prima Facie Case for Disability.

Disability is the "inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a plaintiff is disabled, an ALJ applies a five-step sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520. The plaintiff bears the burden of establishing a *prima facie* case for disability in the first four steps of evaluation. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984) (citation omitted). However, the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

The five-step analysis proceeds as follows. First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must have a "severe" impairment. *Id.* § 404.1520(c). To be considered severe, a medical impairment must significantly limit physical or mental ability to do basic work activities and must be of twelve months duration

3

or be expected to last for at least twelve months. (*Id.*) Third, if the claimant's impairment meets or equals one of the impairments listed in Appendix 1 to the regulation (a list of impairments presumed severe enough to preclude work), benefits are awarded without consideration of the claimant's age, education, or work experience. *Id.* § 404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the ALJ will assess and make a finding about the claimant's residual functional capacity ("RFC") based on all relevant medical and other evidence in the claimant's case record. *Id.* § 404.1520(e). The RFC measurement describes the most an individual can do despite his or her limitations. *Id.* § 404.1545(a)(1). If the claimant has the RFC to perform past relevant work, benefits will be denied. *See id.* § 404.1520(f). If the claimant cannot perform past relevant work, the ALJ will proceed to step five. *Id.* § 404.1520(g)(1).

At step five, the ALJ determines whether the claimant can make an adjustment to other work. *Id.* § 404.1520(g). If the claimant can make the adjustment to other work, the ALJ will find the claimant is not disabled; if the claimant cannot make an adjustment to other work, the ALJ will find that the claimant is disabled. *Id.* § 404.1520(g)(1). There are two ways to make this determination: (1) by the testimony of an impartial vocational expert or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. Part 404, Subpart P, Appendix 2. *Tackett*, 180 F.3d at 1100-01 (9th Cir. 1999). (citation omitted).

**C.     The ALJ Did Not Err in Assessing Plaintiff's Mental Impairments.**

Plaintiff challenges two related findings by the ALJ regarding Plaintiff's mental impairments. First, Plaintiff argues that the ALJ erred in giving more weight to the opinion of non-examining state agency psychiatrist Dr. Berkowitz than to the opinion of consultative psychologist Dr. Martin. Second, Plaintiff argues that the ALJ erred in finding that Plaintiff's mental impairments are not "severe." The Court discusses both issues in turn.

**1.  The ALJ did not err in weighing the medical opinions regarding Plaintiff's mental impairments.**

The Ninth Circuit has developed standards that guide the analysis of the ALJ's weighing of medical evidence. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). The weight

4

given to medical opinions depends in part on whether they are offered by treating, examining, or non-examining (reviewing) professionals. *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). When weighing the opinions of different physicians, "the opinion of a treating physician is . . . entitled to greater weight than that of an examining physician, the opinion of an examining physician is entitled to greater weight than that of a non-examining physician." *Garrison v. Colvin,* 759 F.3d 995, 1012 (9th Cir. 2014) (citation omitted). Treating physicians are afforded greater weight because they are in a better position to know and observe the patient as an individual. *Sprague v. Bowen*, 812 F.23d 1226, 1230 (9th Cir. 1987) (citation omitted). However, a treating physician's opinion "is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (citation omitted).

When a treating or examining physician's opinion is not contradicted by other evidence in the record, it may be rejected only for "clear and convincing" reasons. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (quoting *Lester*, 81 F.3d at 830-31). When a treating or examining physician's opinion is contradicted, the ALJ must provide only "specific and legitimate reasons" for discounting it. *Id.* The weight given an examining physician's opinion, moreover, depends on whether it is consistent with the record and accompanied by adequate explanation, among other things. 20 C.F.R. § 404.1527(c)(3)-(6). Furthermore, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002) (citation omitted). The Ninth Circuit has held that an "ALJ may 'permissibly reject[] . . . check-off reports that [do] not contain any explanation of the bases of their conclusions.'" *Molina v. Astrue*, 674 F.3d 1104, 1111-12 (9th Cir. 2012) (alterations in original) (quoting *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996)). An ALJ errs when the ALJ rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for the ALJ's conclusion. *Garrison*, 759 F.3d at 1012-13 (citation omitted).

1    Here, Plaintiff attended a consultative examination performed by Dr. Martin on September 19, 2017. (AR 648-51.) Dr. Martin conducted a review of records, a complete psychological evaluation, and a mental status exam. (AR 648.) He noted that Plaintiff endorsed symptoms of PTSD, depression, and anxiety. (*Id.*) Plaintiff reported that she was currently utilizing mental health counseling services and had been prescribed psychotropic medications in the past but not currently. (AR 649.) She also reported mild problems with memory and concentration. (*Id.*) Her mood was congruent with the statement: "I guess I'm okay." (AR 650.) She was oriented and intelligible and she had fair or adequate attention, fund of knowledge, memory, and insight and judgment. (*Id.*) Her thought process was organized, coherent, linear, and goal-directed and her thought content was normal. (*Id.*)

    Dr. Martin diagnosed Plaintiff with unspecified depressive disorder, unspecified anxiety disorder, unspecified trauma and stressor-related disorder, and unspecified somatic symptom and related disorder. (*Id.*) His prognosis for Plaintiff was fair: he believed her psychiatric symptoms may diminish with mental health treatment, but no significant changes were likely to occur within the next 12 months. (*Id.*) Dr. Martin found that Plaintiff was moderately limited in her ability to: (1) maintain regular attendance in the workplace; (2) perform work activities on a consistent basis; (3) complete a normal workday or workweek without interruptions resulting from her psychiatric condition; (4) interact with coworkers and the public; and (5) deal with the usual stresses encountered in a competitive environment. (AR 651.) In all other areas of work-related functioning, Dr. Martin found Plaintiff mildly limited or not significantly limited. (*Id.*)

    Non-examining state agency psychiatrist Dr. Berkowitz reviewed Dr. Martin's report but found it internally inconsistent, overly restrictive, and deserving of less weight because Dr. Martin's mental status examination findings were unremarkable, yet Dr. Martin found Plaintiff had moderate limitations in several domains. (AR 124.) Dr. Berkowitz found that Plaintiff had only mild or no limitations in all four major areas of mental functioning. (AR 126.)

    The ALJ gave Dr. Berkowitz's opinion "great weight" and Dr. Martin's opinion "little weight." (AR 18-19.) Since Dr. Martin examined Plaintiff, and Dr. Berkowitz did not, the ALJ was required to provide "specific, legitimate reasons . . . supported by substantial record evidence"

for crediting Dr. Berkowitz's opinion over Dr. Martin's. *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (citation omitted).  The ALJ's stated reasons for crediting Dr. Berkowitz's opinion over Dr. Martin's were that Dr. Berkowitz's opinion was more consistent with Dr. Martin's normal mental status examination findings and the absence of mental health treatment in the medical evidence of record.  (AR 18-19.)  Plaintiff contends these reasons are not specific or legitimate because a normal mental status examination is not necessarily inconsistent with moderate limitations, and the ALJ misstated the evidence of record regarding Plaintiff's mental health treatment.  The Court rejects these arguments.

First, it is true that a normal mental status examination is not necessarily dispositive of whether an individual suffers from moderate limitations in work-related functioning.  But the lack of any abnormal findings on the mental status examination is certainly relevant to assessing the weight to give to Dr. Martin's assessed limitations, since it means that the mental status examination does not provide any support for those limitations.  *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion . . . the more weight we will give that medical opinion.").  Moreover, this normal mental status examination must be viewed in the context of the ALJ's other stated reason for discounting Dr. Martin's opinion: the lack of mental health treatment in the record.  (AR 18-19.)

Turning to that issue, Plaintiff argues that the ALJ's reliance on the "absence of mental health treatment contained in the medical evidence of record," (AR 19), was unjustified because the record shows that Plaintiff started treatment with a psychotherapist, Dr. Niall, on May 31, 2019.  (*See* AR 71-72, 384, 753.)  The ALJ did not ignore this evidence, however, but rather noted that Plaintiff had not sought any mental health treatment prior to May 2019 and found that the June 10, 2019 letter submitted by Dr. Niall did not provide support for severe mental impairments because it merely contained diagnoses and said that Dr. Niall "will be working with [Plaintiff] as a psychotherapist," but did not actually show that any "treatment has occurred."  (AR 19, 21, 753.)  While one could quibble over whether the letter and Plaintiff's testimony establish that some "treatment has occurred," (*see* AR 19, 71-72, 384, 753), the ALJ's central point is valid.  There are no mental health treatment notes in the medical evidence of record, and the record shows Plaintiff

7

did not seek any mental health treatment until May 2019, over two years after she alleged her work-limiting anxiety started (AR 119) and eight months after she testified at her first hearing that she wanted to go to therapy because she "really need[ed] it." (AR 49.)[2]

In addition, Plaintiff was asked if there was a reason she did not seek treatment sooner, and she said there was no specific reason, she "just thought I could deal with it on my own." (AR 49.) This "unexplained or inadequately explained failure to seek treatment" is a specific and legitimate reason to favor Dr. Berkowitz's assessment of "mild" limitations over Dr. Martin's assessment of "moderate" limitations, especially in light of the normal mental status examination results. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted) (finding lack of treatment to be a sufficient reason to meet the higher "specific, clear, and convincing" standard for discounting a claimant's testimony). Accordingly, the ALJ did not err in weighing the medical opinions regarding Plaintiff's mental impairments.

**2.     The ALJ did not err in finding no severe mental impairment at Step 2.**

Next, Plaintiff contends the ALJ erred in finding that Plaintiff does not have a severe mental impairment at Step 2. Plaintiff's argument here is essentially identical to and derivative of her argument regarding the ALJ's weighing of medical opinions.

Under step two, "[a]n impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a). With regards to mental impairments, an impairment that creates only "mild" limitations in work-related functioning is generally found to not be severe, whereas one that creates "moderate" limitations is usually found to be severe. *Id.* § 404.1520a(d)(1).

Plaintiff argues that the ALJ erred in finding no severe mental impairment because Dr. Martin found "moderate" limitations in five areas of mental functioning. But the Court has

---

[2] Plaintiff cites Social Security Rulings and case law stating that many people suffering from mental impairments do not seek treatment because they are not aware that they have a serious mental disorder that needs treatment. (Pl. Mot. at 17 (citing Social Security Ruling 16-3p and *Nguyen v. Chater*, 100 F. 3d 1462, 1465 (9th Cir. 1996))). This is certainly true, but it is inapplicable here, since, as noted, Plaintiff was aware over two years before she sought treatment that she had a mental impairment that was allegedly serious enough to affect her ability to work. (AR 119.)

8

1  already found that the ALJ did not err in giving Dr. Berkowitz's opinion, which found only mild
2  limitations, more weight than Dr. Martin's moderate limitations.  Accordingly, the ALJ also did
3  not err in relying on Dr. Berkowitz's assessment of mild limitations to find that Plaintiff's mental
4  impairments are not severe.

**D.   The ALJ Erred in Discrediting Plaintiff's Testimony.**

Plaintiff also challenges the ALJ's failure to fully credit her subjective testimony.  In considering such challenges, the Court is mindful that "the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Reddick*, 157 F.3d at 722 (citation omitted).  "The ALJ's findings, however, must be supported by specific, cogent reasons." *Id*. (citation omitted).  In evaluating the credibility of a claimant's subjective symptom testimony, an ALJ must engage in a two-step analysis. *Molina*, 674 F.3d at 1112 (citing *Vasquez v. Astrue*, 752 F.3d 586, 591 (9th Cir. 2009)).

First, the ALJ must determine if there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. (internal quotation marks and citation omitted).  "Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (internal quotation marks and citation omitted).

Second, if there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks and citation omitted).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Berry*, 622 F.3d at 1234 (internal quotation marks and citation omitted).  The ALJ is permitted to consider a number of factors including: (1) inconsistencies in the record concerning the claimant's symptoms; (2) any unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; and (4) observations of treating and examining physicians and other third parties. *See Smolen*, 80 F.3d at 1284 (citations omitted).

If the ALJ supports his credibility determination with substantial evidence in the record, the Court may not "second-guess that decision." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (internal quotation marks and citation omitted).

Here, Plaintiff testified that she was disabled due to her mental impairments, asthma, plantar warts, and shoulder and back pain. (AR 38-39, 43, 74-75, 83-87, 106, 119, 304, 324.) The ALJ acknowledged this testimony and found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms. (AR 21.) But the ALJ also found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (*Id.*) The ALJ then provided reasons for rejecting Plaintiff's testimony about the severity of each of her conditions. (AR 21-22.) Since the ALJ did not identify any evidence of malingering, he was required to provide "specific, clear and convincing reasons" for rejecting Plaintiff's testimony. *Lingenfelter*, 504 F.3d at 1036 (citation omitted). The Court finds that the ALJ provided specific, clear, and convincing reasons for rejecting Plaintiff's testimony about her mental impairments, asthma, and plantar warts, but the reasons provided for rejecting Plaintiff's testimony about her shoulder and back pain were insufficient.

**1. Mental impairments**

Starting with Plaintiff's mental impairments, the ALJ rejected Plaintiff's testimony about the severity of these impairments for the same reasons he gave Dr. Martin's testimony little weight. (AR 18-19, 21.) The ALJ found that Plaintiff's testimony was inconsistent with the normal mental status examination in the record and with Plaintiff's failure to seek treatment until May 2019. (*Id.*) The Court has already found that these reasons meet the "specific and legitimate" standard for rejecting Dr. Martin's opinions, and the Court now finds that these reasons also meet the higher "specific, clear and convincing" standard for rejecting Plaintiff's testimony.

As discussed above, Plaintiff indicated in a form that her pain was causing her "severe anxiety," as of April 2017. (AR 119.) Yet in September 2018, almost a year-and-a-half later, she testified that she really needed therapy, but she was not currently doing anything to treat her

1    mental impairments and that there was no particular reason she had not begun therapy. (AR 49.)

2    Plaintiff then waited another eight months before making an appointment with a psychotherapist.

3    (AR 71-72, 384, 753.) This inadequately explained failure to seek treatment for over two years,

4    along with the normal mental status examination and lack of mental health treatment notes in the

5    record, is sufficient to meet the specific, clear, and convincing standard required to discount

6    Plaintiff's testimony regarding her mental impairments. *See Smolen*, 80 F.3d at 1284 (citations

7    omitted).

### 2.    Asthma

Turning next to Plaintiff's subjective account of her asthma, the ALJ noted that Plaintiff testified that her asthma was "out of control" and that she had been to the emergency room three times in the first nine months of 2018 because of her asthma. (AR 21, 45-46.) Yet, as the ALJ pointed out, the last emergency room treatment for asthma in the record was in March 2017, and that episode was exacerbated by viral illness. (AR 21, 531.) This inconsistency provides a specific, clear, and convincing reason to discount Plaintiff's testimony, as there is a significant difference between someone who has been to the ER three times in the past nine months with asthma attacks, and someone who has been to the ER once with an asthma attack exacerbated by viral illness a year and a half ago. *See Smolen*, 80 F.3d at 1284 (citations omitted) (finding inconsistencies in the record regarding claimant's symptoms a sufficient basis for discrediting the claimant's testimony). It is also worth noting that Plaintiff has not provided any explanation for this discrepancy in her motion or her reply, despite the ALJ's and Commissioner's reliance on it.

### 3.    Plantar warts

Plaintiff testified that her plantar warts make it very painful for her to walk and prevent her from wearing professional shoes. (AR 38, 47, 74-75, 77-78, 324, 329.) She also testified that she had undergone "maybe six surgeries" and had bones removed from her feet because of her plantar warts. (AR 47.) She also said that she had a biopsy done on her feet and had begun taking medication for a severe fungus on her feet. (AR 74.) But, as the ALJ pointed out, the record only contains one treatment note related to Plaintiff's plantar warts, in January 2017, when Plaintiff complained to her primary care physician, Dr. Shrivasata, that her plantar warts had been causing

11

her pain on the bottoms of her feet for years. (AR 18, 21, 598.) Dr. Shrivastava referred Plaintiff to the podiatry department for either salicyclic acid treatment or cryotherapy. (AR 598.) The record does not contain any information about whether Plaintiff followed through on that referral, nor does the record contain any treatment notes from a podiatrist.

The ALJ also noted that Plaintiff told Dr. Shrivasata in January 2018 that she walks a lot because she does not have a car and that this exacerbates her asthma. (AR 18, 21, 698.) Substantial evidence supports the ALJ's view that this statement is inconsistent with Plaintiff's testimony that her plantar warts make it very hard for her to walk and she can only walk short distances. (AR 18, 21, 38, 74-75, 77-78, 324, 329.)

The Court also notes that, although Plaintiff challenges the ALJ's failure to fully credit her testimony in general, she offers no specific argument about the ALJ's failure to credit her testimony regarding her plantar warts, nor does she specifically challenge the ALJ's finding that her plantar warts are not a severe impairment. (AR 18.) Nor does Plaintiff offer any explanation for the lack of records related to her plantar warts. The Court finds that Plaintiff's statement regarding walking a lot and the dearth of records related to her plantar warts constitute specific, clear, and convincing reasons for discounting Plaintiff's testimony regarding this impairment.

### 4. Shoulder pain

Plaintiff testified at her first hearing that she tore her rotator cuff in her right shoulder when she fell in January 2016. (AR 39.) She underwent surgery on the shoulder, which helped at first, but then, after a while, the pain came back. (AR 40.) Because of the pain in her shoulder, Plaintiff testified that she has trouble lifting heavy objects or performing chores with her right hand and she cannot use a keyboard for more than 15 minutes at a time, because keyboarding requires holding her shoulder in one place, which becomes painful. (AR 40-42.) Plaintiff also testified that she has difficulty sleeping due to her pain and has to take pain medication. (AR 42-43.) The ALJ asked Plaintiff whether her doctors had mentioned whether further surgical intervention would be helpful, and Plaintiff said they had not mentioned that. (AR 52.) At her second hearing, Plaintiff testified that her shoulder had gotten more painful, making it more difficult to lift things. (AR 74.)

The ALJ found that Plaintiff's testimony regarding her shoulder pain was "inconsistent with the medical evidence of record" because "the medical evidence of record shows no specialized treatment for [Plaintiff's] right shoulder since October 25, 2016, when physical examination was normal." (AR 21.) The Court does not find this to be a specific, clear, and convincing reason to discount Plaintiff's testimony.

First, the ALJ's reference to a normal physical examination on October 25, 2016 is misleading because physical examinations after October 25, 2016 were not normal and showed decreased range of motion and/or tenderness in Plaintiff's right shoulder. (*See* AR 645, 726-27, 744.) This is consistent with Plaintiff's testimony that her shoulder improved immediately after the surgery, but then got worse again. (AR 40.)

Second, as for the ALJ's statement that Plaintiff did not receive "any specialized treatment" for her shoulder after October 25, 2016, Plaintiff did report increased shoulder pain to her primary care physician on multiple occasions, and her primary care physician prescribed opioid painkillers for her shoulder pain and referred her for another appointment with her orthopedic surgeon, Dr. Molina. (AR 617, 645, 688, 698, 703, 726-27.) It is unclear if this appointment ended up occurring, as there are no records from Dr. Molina after October 25, 2016. But the ALJ did not ask Plaintiff if she followed up on this referral. Instead, the ALJ simply asked Plaintiff if her doctors had mentioned the possibility for further surgery, and she said they had not. (AR 52); *see Cortes v. Colvin*, No. 2:15-CV-2277 (GJS), 2016 WL 1192638, at *4 (C.D. Cal. Mar. 28, 2016) ("[A]n ALJ errs in relying on conservative treatment if 'the record does not reflect that more aggressive treatment options are appropriate or available.'") (quoting *Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010)); Social Security Ruling 16-3p, 2016 WL 1119029, at *9 (S.S.A. Mar. 16, 2016) (listing reasons a claimant may not pursue treatment including that "[a] medical source may have advised the individual that there is no further effective treatment to prescribe or recommend"). Moreover, Plaintiff testified that she structured her daily activities around her shoulder pain by getting help from her family, avoiding lifting objects, using her left arm, and taking frequent breaks when using a computer. (AR 40-42.) This type of lifestyle adjustment is another reason recognized by the Administration that an individual may choose not

13

1    pursue treatment commensurate with their impairments. *See* Social Security Ruling 16-3p, 2016
2    WL 1119029, at *9. In light of these facts, Plaintiff's failure to seek some unspecified form of
3    "specialized treatment" for her shoulder after October 25, 2016 is not a specific, clear, and
4    convincing reason to discount her testimony regarding her shoulder pain.[3]

### 5.    Back pain

Plaintiff testified that she suffers from back pain that affects her ability to bend, lift, squat, and sit. (AR 43.) She said she can sit comfortably for half an hour or uncomfortably for about an hour. (*Id.*) She received cortisone shots for her back pain in the past, and they would help for a month or two, but then the pain would return. (AR 40.) Her back pain causes her difficulty sleeping and she takes pain medication for it. (AR 42-43.) Sometimes her back pain is so intense that it is hard for her to get out of bed to go to the bathroom and she sometimes has to crawl to the bathroom. (AR 40.)

The ALJ discounted this testimony because: (1) the consultative examiner, Dr. Tang, found Plaintiff could sit for two hours at a time, whereas Plaintiff estimated she could only sit for one hour at a time; (2) physical examinations of Plaintiff's back were "generally normal except for occasional observation of point tenderness"; and (3) notes from Plaintiff's primary care physician indicate that Plaintiff's "low back pain is stable on medications." (AR 21-22.) The Court does not find any of these reasons to be specific, clear, and convincing.

First, Dr. Tang's opinion that Plaintiff could sit for up to two hours at a time is not a basis for discrediting Plaintiff's testimony because the ALJ did not actually credit Dr. Tang's opinion. (AR 21-22, 747.) Instead, the ALJ imposed no sitting limitations after finding that Dr. Tang's sitting limitation was "inconsistent with the medical evidence of record related to [Plaintiff's] plantar warts showing they are a nonsevere impairment." (AR 22.) The ALJ's different explanations for discrediting the sitting limitations described by Plaintiff and Dr. Tang do not

---

[3] The ALJ also discounted Plaintiff's testimony that she was limited in her ability to keyboard because examination of her hands was normal and she exhibited 5/5 bilateral grip strength at her consultative examination. (AR 21.) But Plaintiff did not testify that she had difficulty keyboarding because of any problems with her hands or grip strength; she testified that she had difficulty keyboarding because of her shoulder problems, rendering the hand examination and grip strength irrelevant. (AR 40-42.)

14

make sense.  The ALJ treated Dr. Tang's sitting limitation as being related to Plaintiff's plantar warts, (AR 22, 747), but then used this rejected limitation that was purportedly related to plantar warts as a reason to discredit Plaintiff's testimony about her back impairment, (AR 21, 43).  The Court cannot discern the ALJ's reasoning on this point and it therefore cannot serve as a specific, clear, and convincing reason to discredit Plaintiff's testimony regarding her back pain.

Second, the Court finds that the ALJ's reference to "generally normal" back examinations with "occasional observation of point tenderness" is not a specific, clear, and convincing reason to discredit Plaintiff's testimony regarding her back pain.  (AR 22.)  The ALJ did not explain what parts of Plaintiff's testimony were inconsistent with these "generally normal" examinations findings or why.  *See Berry*, 622 F.3d at 1234 ("[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.") (internal quotation marks and citation omitted).  In addition, a lack of objective medical evidence to fully corroborate the severity of pain is not a sufficient reason alone to reject subjective pain testimony.  *Id.* (citation omitted)

Third, the ALJ's citation to a treatment note that described Plaintiff's chronic lower back pain as "stable," without any further explanation, (AR 22, 645), is not a specific, clear, and convincing reason to discount Plaintiff's testimony regarding her lower back pain.  Notably, other records cited by the ALJ show that Plaintiff's back pain was not stable.  For example, on November 29, 2016, Plaintiff saw her primary care physician, Dr. Shrivasata, complaining of lower back pain for the past month that had caused her to go to the ER three times.  (AR 591-93.)  Likewise, on December 27, 2016, Plaintiff returned to Dr. Shrivastava still complaining of "severe and constant lower back pain."  (AR 594-96.)  Plaintiff's testimony regarding her back pain is consistent with these treatment notes and a single, unexplained description of her back pain as "stable" is not a specific, clear, and convincing reason to discount that testimony.  *See Holohan*, 246 F.3d at 1207 (rejecting the ALJ's selective reliance on some medical records to find that the claimant's condition was improving, where many other records showed "continued, severe impairment"); *Williams v. Colvin*, No. ED CV 14-2146-PLA, 2015 WL 4507174, at *6 (C.D. Cal. July 23, 2015) ("An ALJ may not cherry-pick evidence to support the conclusion that a claimant is

15

not disabled, but must consider the evidence as a whole in making a reasoned disability determination.") (citation omitted).

In sum, none of the reasons given by the ALJ for discounting Plaintiff's testimony regarding her shoulder and back pain meet the specific, clear, and convincing standard and remand on this basis is therefore warranted. The only remaining question is what type of remand.

In reviewing a Social Security Commissioner's decision, a court may remand the case "either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292 (citation omitted).  Typically, when a court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (internal quotation marks and citations omitted).  Moreover, "[r]emand for further proceedings is appropriate where there are outstanding issues that must be resolved before a disability determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1235 (9th Cir. 2011) (citation omitted) (reversing and remanding for the consideration of new evidence instead of awarding benefits); *see also Harman v. Apfel*, 211 F.3d 1172, 1181 (9th Cir. 2000) ("Because neither the ALJ nor the vocational expert had the full picture before them, remand for further proceedings is particularly appropriate.").

Here, the Court finds that there are additional issues that must be resolved, and it is not clear whether the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated.  Accordingly, the Court will remand for further proceedings.

**E.    The ALJ Erred in Failing to Discuss the Lay Witness Testimony of Plaintiff's Daughter.**

Plaintiff also argues that the ALJ erred in failing to discuss, much less provide reasons for rejecting, the testimony of Plaintiff's daughter.  The Court agrees.

In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006) (citations omitted).  Friends and family members in a position to observe a

16

claimant's symptoms and daily activities are competent to testify as to their condition. *Dodrill v. Shalala,* 12 F.3d 915, 918-19 (9th Cir. 1993) (citation omitted). Such testimony cannot be discounted "unless [the ALJ] expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Stout*, 454 F.3d at 1053 (quoting *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001)). An ALJ may not discount lay witness testimony simply because of that witness's alleged bias as a friend or family member of the claimant. *Regennitter v. Comm'r of the Soc. Sec. Admin.*, 166 F.3d 1294, 1298 (9th Cir. 1999) (citation omitted).

Here, Plaintiff's daughter filled out a third-party function report describing Plaintiff's impairments consistently with Plaintiff's own testimony regarding her impairments. (AR 338-44.) The Commissioner concedes that the ALJ failed to discuss this testimony in his decision, but argues that this error was harmless because Plaintiff's daughter's testimony was consistent with Plaintiff's testimony, so the same reasons given by the ALJ for rejecting Plaintiff's testimony apply equally to her daughter's testimony. But this argument relies on the assumption that the ALJ did not err in assessing Plaintiff's testimony. Since the Court finds that the ALJ did err in his assessment of Plaintiff's testimony, the Court cannot find the ALJ's failure to address this lay witness testimony harmless and therefore remands on this basis as well. On remand, once the ALJ has properly assessed Plaintiff's testimony, the ALJ must then also properly assess the testimony of her daughter.

**F.     The Court Remands for Further Assessment of Plaintiff's Residual Functional Capacity and Steps Four and Five of the Sequential Evaluation.**

Plaintiff makes several additional arguments regarding alleged errors in the ALJ's assessment of Plaintiff's RFC and the ALJ's step four and step five determinations. Because the Court finds that the ALJ erred in his assessment of Plaintiff's subjective testimony, and because the RFC and step four and step five determinations necessarily depend on the ALJ's assessment of Plaintiff's testimony, the Court remands on these bases as well. On remand, once the ALJ has properly assessed Plaintiff's testimony, then the ALJ must also re-assess Plaintiff's RFC and analyze whether Plaintiff can perform her past relevant work or adjust to other work.

///

**CONCLUSION**

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Plaintiff's motion for summary judgment and GRANTS IN PART and DENIES IN PART the Commissioner's cross-motion for summary judgment.

**IT IS SO ORDERED**.

Dated: October 21, 2021



SALLIE KIM
United States Magistrate Judge